## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ADAMA NDIAYE,

        Plaintiff,

    vs.                      Civil Action 2:01-CV-1094

                                    Magistrate Judge King

JEFFERY E. McELROY, *et al.*,

        Defendants.

## OPINION AND ORDER

This is a civil rights action under 42 U.S.C. § 1983, removed to this Court, in which plaintiff alleges that defendants violated his civil rights in connection with his arrest and subsequent felony prosecution. Plaintiff also asserts parallel state law claims, as well as claims of defamation and vicarious liability. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the motion of defendants McElroy and the City of Columbus for summary judgment.

**I. Background**

Plaintiff is a resident of Franklin County, Ohio. *Amended Complaint,* at ¶ 1. He names as defendants Jeffery E. McElroy, a police officer employed by the City of Columbus; the City of Columbus, Department of Public Safety, Division of Police; Al Rosa, an Ohio corporation and owner of a building located at 5055 Sinclair Road, Columbus, Ohio 43224 (hereinafter "the

Building");[1] and Brian Williams, a.k.a. Brian Scott, d/b/a STUDIO 69. *Id.,* at ¶¶ 2-5.

The amended complaint alleges that, on October 1, 2000, Williams was renting the Building where he operated a nightclub known as Studio 69. *Id.,* at ¶¶ 7, 9. On that same date, defendant McElroy was working at the Building as an off-duty police officer for security purposes.[2] *Id.,* at ¶ 9. When plaintiff exited the Building, around 2:00 a.m., defendant McElroy followed plaintiff and ordered him to stop and raise his hands. *Amended Complaint,* at ¶¶ 14-16; *Affidavit of Adama Ndiaye,* at ¶20. Plaintiff was arrested on a felony charge of having a concealed weapon in his car. *Amended Complaint,* at ¶¶ 17-18. That charge was eventually dismissed. *Id.,* at ¶ 20.

Plaintiff admits that his vehicle contained a weapon, *i.e.,* a "Rege 45 caliber handgun," which was loaded, but argues that it was concealed underneath his seat, *Id.,* at ¶ 23, and could not have been seen from outside the car. *Id.,* at ¶ 24; *Deposition of Adama Ndiaye,* at pp. 37-38. Plaintiff claims that defendant McElroy, who married plaintiff's former girlfriend, *Amended Complaint,* at ¶ 10, actually entered plaintiff's vehicle without either consent or a warrant, and without probable cause, and moved the gun from underneath the seat so that it was partially visible to the other police officers present. *Amended Complaint,* at ¶ 27; *Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment,* at pp. 2, 4-5. Plaintiff claims that defendant McElroy's actions constitute an unlawful search, leading to a false arrest and defamation of character in violation of his civil rights as protected by § 1983, as well as state law. *Amended Complaint,* at ¶¶ 26-52. Additionally, plaintiff claims that defendant Williams is vicariously liable for defendant McElroy's actions. *Id.,* at ¶¶ 53-62.

_____

[1]By earlier Order, defendant Al Rosa was dismissed from this case. *Opinion and Order* (June 2, 2003).

[2]Although not alleged in the amended complaint, it is clear that at least two (2) other Columbus police officers were working special duty at Studio 69 that night.

## II. Discussion

### A. Standard

The standard for summary judgment is well established.  This standard  is found in Fed. R. Civ. P. 56, which  provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ."  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251.

3

### B. Application

#### 1. Federal Claims

Plaintiff asserts several claims under § 1983 which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State ... subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding
> for redress ....

42 U.S.C. § 1983. To succeed on a claim under § 1983, plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *See Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir. 2001).

#### a. Official Capacity Claims

Plaintiff does not specifically identify the capacity in which he has sued defendant McElroy. However, plaintiff alleges that, "[a]t all times relevant to the allegations herein, Defendant McElroy was acting in his official capacity as a Columbus police officer...." *Amended Complaint,* at ¶ 8. A suit against a government employee in his or her official capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978). Thus, if the government agency receives notice of the action and has an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the government agency. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). In this case, it appears that plaintiff has brought suit against defendant McElroy in his official capacity. Therefore, those claims are actually against the City of Columbus. In any event, plaintiff has named the City of Columbus as a defendant in this action.

4

A local government, such as the City of Columbus, qualifies as a "person" for purposes of § 1983 liability. *Monell,* 436 U.S. at 690. However, the City of Columbus cannot be held liable under § 1983 on a theory of *respondeat superior. See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403-406 (1997)("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation..."). Instead, it is only when the execution of a government's policy or custom inflicts the injury that the government as an entity can be held responsible under § 1983. *Monell,* 436 U.S. at 694. Thus, to succeed on such a claim, a plaintiff must demonstrate a direct causal link between a policy or custom and the alleged constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular policy or custom. *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993), *cert. denied,* 510 U.S. 1177 (1994).

A "policy" has been defined as "formal rules or understanding – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986). A "custom," on the other hand, can be the basis of governmental liability if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 690-91. To establish the existence of such a "custom or policy," a plaintiff must adduce specific facts supporting his claims; conclusory allegations are insufficient. *See Culberson v. Doan,* 125 F. Supp. 2d 252, 273 (S.D. Ohio 2000).

Plaintiff has failed to provide any evidence of a custom or policy of the City of Columbus that could have caused the constitutional injuries alleged in this case. For instance, plaintiff does not point to a training manual or policy statement issued by the City of Columbus that would have

lead to the alleged constitutional violations, nor does plaintiff allege that defendant McElroy was inadequately trained with respect to the actual policies and customs of the City of Columbus. Thus, plaintiff's allegations, even if true, reflect nothing more than a mere isolated incident on the part of a single police officer.

Although, in limited situations, a single action by a governmental "decision maker" can also represent an act of official government policy sufficient to give rise to local governmental liability under § 1983, *Pembaur,* 475 U.S. 469, it cannot be reasonably argued that defendant McElroy was acting as the city's decision maker in this case. In fact, plaintiff does not even allege that defendant McElroy acted as such. There is absolutely no evidence that defendant McElroy was responsible for establishing final policies or customs for the City of Columbus with respect to searches and seizures. Therefore, because a municipal policy or custom cannot be inferred from plaintiff's allegations regarding defendant McElroy, *i.e.,* a single police officer not responsible for establishing municipal policy or custom, plaintiff's claims against the City of Columbus are without merit. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)(concluding that a municipal policy or custom of inadequate training could not be inferred from evidence of a shooting incident involving a single police officer). *See also Stengel v. City of Columbus, Ohio,* 737 F. Supp. 1460, 1465 (S.D. Ohio 1989).

### b. Individual Capacity Claims

Initially, the moving defendants argue that the amended complaint fails to assert any claims against defendant McElroy in his individual capacity. The amended complaint does not specify whether defendant McElroy is sued in his individual or official capacity. While it is preferable that a plaintiff explicitly state whether the defendant has been sued in his individual capacity, the failure

to do so is not fatal if the "course of proceedings" otherwise demonstrates that the defendant received sufficient notice of the capacity in which he is being sued. *Moore v. City of Harriman,* 272 F.3d 769, 772 (6ᵗʰ Cir. 2001). Under this "course of proceedings" test, a court is to consider the nature of the plaintiff's claims, the nature of any defenses raised in response to the complaint, and whether requests for compensatory or punitive damages have been made. *Id.,* at 772 n.1.

This Court is satisfied that defendant McElroy was sufficiently notified that plaintiff intended to sue this defendant even in his individual capacity. For instance, the caption of the amended complaint does not identify defendant McElroy by his official title and that pleading reflects separate requests for compensatory and punitive damages against both the City of Columbus and defendant McElroy. Additionally, although this defendant has not answered the amended complaint, the answer to the original complaint raised the defense of qualified immunity, which applies only to a government official sued in his individual capacity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Therefore, this Court concludes that defendant McElroy had notice that plaintiff intended to assert claims against this defendant in his individual capacity.

### i. Fourth Amendment

As fairly construed, the amended complaint claims that defendant McElroy violated plaintiff's Fourth Amendment rights, including the right to be free from unreasonable searches and unlawful arrests. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, *see Mapp v. Ohio,* 367 U.S. 643 (1961), provides: "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause ...." U.S. Const., amend. IV. Plaintiff's arrest by defendant

McElroy constituted a seizure within the meaning of the Fourth Amendment.[3]  Thus, the question

is whether this seizure was reasonable within the meaning of the Fourth Amendment.

Defendants argue that there was probable cause to arrest plaintiff for violation of Ohio's

concealed weapon statute[4] because the arresting officers saw a gun sticking out "in plain view" from

underneath the seat of plaintiff's vehicle.  Plaintiff does not deny that he was carrying a weapon

within the meaning of O.R.C. § 2923.12 on the night in question, nor does he contend that his

actions conformed with Ohio's concealed weapon statute.[5]  *See Amended Complaint,* at ¶ 23.

Rather, plaintiff argues that the gun was under the vehicle's seat and could not have been viewed

by any of the officers unless someone had entered the vehicle without permission.  Plaintiff takes

the position that it must have been defendant McElroy who did so.  *Id.,* at ¶ 27; *Affidavit of Adama*

*Ndiaye,* at ¶¶ 14-17.

---

[3]  "Whenever an officer restrains the freedom of a person to walk away, he has seized that person.
*Tennessee v. Garner,* 471 U.S. 1, 7 (1985).

[4]"No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any
deadly weapon or dangerous ordnance."  O.R.C. § 2923.12(A).  Violation of this statute may constitute a felony if,
as here, the firearm is loaded.  O.R.C. § 2923.12(D).  While Ohio's law permits a person to carry a concealed
weapon in a vehicle, the weapon must be carried in compliance with § 2923.16(C), which provides in relevant part:

No person shall knowingly transport or have a firearm in a motor vehicle, unless it is unloaded and
is carried in one of the following ways:

(1) In a closed package, box, or case;

(2) In a compartment that can be reached only by leaving the vehicle;

(3) In plain sight and secured in a rack or holder made for the purpose;

(4) In plain sight with the action open or the weapon stripped, or, if the firearm
is of a type on which the action will not stay open or which cannot be easily
stripped, in plain sight.

[5]The amended complaint does allege, however, that plaintiff, a merchant, "is lawfully permitted to carry
with him the registered handgun, and on occasion, does so."  *Amended Complaint,* at ¶ 25.

8

Defendant McElroy testified on deposition that he and another officer on special duty that night inspected approximately 100 vehicles in the club parking lot, looking for open containers and weapons. *Deposition of Jeffery Eugene McElroy,* at pp. 32-33. Inspection consisted of shining a flashlight into the vehicle from the driver's side and looking "down towards the floorboard." *Id.,* at p. 36. Although defendant McElroy conceded that he knew plaintiff, he also testified that he had not seen plaintiff arrive at the club. *Id.,* at p. 29. Additionally, although defendant McElroy had seen plaintiff in his vehicle prior to that evening, he testified that he did not immediately identify the vehicle in the parking lot that night as plaintiff's. *Id.,* at pp. 31-32. When he visually inspected plaintiff's vehicle, defendant McElroy testified, he saw a handgun "sticking out under the driver's seat." *Id.,* at p. 36. He called to the other officer, who was "five or ten feet from" defendant McElroy, *Id.,* at p. 38, "I got one." *Id.*

Officer Glenn Bray, the other officer inspecting vehicles that night, testified on deposition that he did not observe defendant McElroy actually inspecting plaintiff's vehicle. *Deposition of Glenn Anthony Bray,* at p. 25. However, when defendant McElroy called him over, officer Bray shone his flashlight into the vehicle and saw "what appeared to be a barrel of a handgun sticking out from underneath the driver's seat." *Id.,* at p. 27. Both officers then called the two other police officers on special duty that night. *Id.,* at p. 30; *Deposition of Jeffery Eugene McElroy,* at p. 41. Both McElroy and Bray denied that any officer opened or entered the car. *Deposition of Glenn Anthony Bray,* at p. 30; *Deposition of Jeffery Eugene McElroy,* at p. 35.

Defendant McElroy called for a license plate identification. *Deposition of Glenn Anthony Bray,* at p. 30. When the car was identified as being registered to plaintiff, defendant McElroy said, "I think I may know who that is." *Id.,* at p. 31.

9

The officers waited approximately 45 minutes before plaintiff exited the club and approached his vehicle. According to both defendant McElroy and Bray, plaintiff unlocked his car with his keys and opened the door. *Deposition of Jeffery Eugene McElroy,* at p. 42; *Deposition of Glenn Anthony Bray,* at p. 36. Defendant McElroy testified that plaintiff was arrested after entering his vehicle.[6] *Deposition of Jeffery Eugene McElroy,* at p. 43. *Accord Affidavit of Stanford Speaks,* at ¶ 5.

Plaintiff testified on deposition that he passed defendant McElroy upon plaintiff's arrival at the club, although the two did not speak. *Deposition of Adama Ndiaye,* at p. 69. Plaintiff passed defendant McElroy again upon existing the club but, again, did not speak. *Id.,* at p. 77; *Affidavit of Adama Ndiaye,* at ¶ 20. As he approached his vehicle, plaintiff observed "that (1) the driver's door was not closed all the way, (2) the exterior mirror lights were on, and (3) the interior dome light was on." *Affidavit of Adama Ndiaye,* at ¶ 21. Finally, plaintiff avers that he was arrested before he entered the vehicle. *Id.,* at ¶ 22.

Plaintiff insists that defendant McElroy unlawfully entered plaintiff's vehicle and repositioned the handgun in such a manner as to be visible to the other officers from outside the vehicle. Plaintiff bases this argument on the following:

> (1) Plaintiff placed the gun under the driver's seat of his vehicle and lowered the seat so that the gun was secure and could not have been seen. *Affidavit of Adama Ndiaye,* at ¶ 14.
>
> (2) Plaintiff shut and locked the doors of his vehicle. *Id.,* at ¶ 18.
>
> (3) Upon exiting Studio 69, and as plaintiff approached his vehicle, he could see that the driver's door was not fully closed and that the dome light and the "exterior mirror lights" were on. *Id.,* at ¶ 21.
>
> (4) Prior to her marriage to defendant McElroy, Tina McElroy had

---

[6]Officer Bray's deposition testimony is not entirely clear on this point.

been romantically involved with plaintiff.  *Id.,* at ¶ 7.

(5) Plaintiff gave Tina McElroy the access code to his vehicle.  *Id.,* at  ¶ 11.

(6) Defendant McElroy has seen plaintiff carry a firearm in plaintiff's store.  *Id.,* at ¶ 8.

These facts, plaintiff asserts, establish that defendant McElroy had both a motive and the opportunity to unlawfully enter plaintiff's vehicle, as well as circumstantial evidence that he in fact did so.  However, this Court concludes that, even accepting these facts as true, plaintiff has failed to present more than a "scintilla of evidence" in support of his claims against defendant McElroy. *See Anderson,* 477 U.S. at 251.

In order to find that defendant McElroy engaged in the misconduct alleged by plaintiff, a fact-finder would unavoidably be required to engage in speculation and to reach conclusions for which plaintiff offers no evidentiary support.  For example, although plaintiff avers that he provided to Tina McElroy the access code to his vehicle, there is no evidence whatsoever that Tina McElroy in turn gave the access code to her husband.  Moreover, plaintiff offers no admissible evidence that defendant McElroy was in fact jealous of plaintiff or harbored a malicious animus toward him.[7] Finally, although plaintiff avers that defendant McElroy observed plaintiff carrying a gun while in plaintiff's store, *Affidavit of Adama Ndiaye,* at ¶ 8, it would require rank speculation to conclude therefrom that defendant McElroy also knew that plaintiff carried a weapon outside his store and stored it under the driver's seat of his vehicle when he left the car.

Having carefully considered the record in this case, the Court concludes that defendant

---

[7]Plaintiff states in his affidavit that Tina McElroy told him that "McElroy had told her that he doesn't want her talking to me, and has instructed her to stay out of [plaintiff's] store."  *Affidavit of Adama Ndiaye,* at ¶ 7.  This hearsay evidence, however, would be inadmissible at trial.

11

McElroy is entitled to summary judgment on the claims asserted against him in his individual capacity.[8]

### ii.  Defamation

Plaintiff alleges that defendant McElroy "knowingly and purposefully made false statements against Plaintiff with respect to the allegation of criminal conduct by Plaintiff." *Amended Complaint,* at ¶ 37.  Plaintiff does not specify whether he brings this claim as a federal claim under § 1983 or as a state law claim.  However, a simple claim of defamation is not actionable under § 1983.  *Paul v. Davis,* 424 U.S. 693 (1976).  Therefore, to the extent that plaintiff has attempted to assert a defamation claim under § 1983, that claim is without merit.

### 2.  State Law Claims

In addition to the federal claims asserted under § 1983, plaintiff has also asserted  parallel state law claims against defendant McElroy.  However, as was discussed *supra,* the allegations supporting plaintiff's federal claims are not sufficient to survive defendants' motion for summary judgment.  Therefore, plaintiff's state law claims, based on those same allegations, are also without merit.  Additionally, plaintiff has asserted parallel state law claims against the official capacity defendants and also appears to assert a state law claim for defamation.

### a.  Official Capacity Claims

As a general rule, political subdivisions such as the City of Columbus are not liable for injury caused by an action of that subdivision or its employees in connection with a governmental function. O.R.C. § 2744.02(A)(1):

> Except as provided in division (B) of this section, a political

---

[8]In light of the foregoing, the Court concludes that it need not consider the parties' arguments relating to qualified immunity.

> subdivision is not liable in damages in a civil action for injury, death, or loss to a person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

The Ohio Supreme Court has established an analysis for determining whether a political subdivision is immune from liability under O.R.C. § 2744.02. *Cater v. Cleveland,* 83 Ohio St. 3d 24, 28 (1998). If it appears that the political subdivision is presumptively entitled to immunity under §2744.02(A)(1), it must then be determined whether one of the five exceptions to immunity, listed in subsection (B), apply. *Cater,* 83 Ohio St. 3d at 28. If one of these exceptions applies, the Court must then consider whether any of the defenses listed in §2744.03 also apply so as to "reinstate" the immunity. *Id.*

The City of Columbus qualifies as a "political subdivision" of the State of Ohio as defined by the statute. *See* O.R.C. § 2744.01(F). Furthermore, this Court concludes that the operation of a police department is a "governmental function" as defined by the statute. *See Woods v. Miamisburg City Schools*, 254 F. Supp. 2d 868, 879 (S.D. Ohio 2003). *See also* O.R.C. § 2744.01(C)(2)(a), (b), (I). Therefore, the City of Columbus is presumptively entitled to the general immunity from liability for monetary damages afforded by § 2744.02(A)(1).

Defendants argue that none of the exceptions to that immunity listed in § 2744.02(B) apply. The exceptions to immunity provided by § 2744.02(B) include:

> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent *operation of any motor vehicle* by their employees when the employees are engaged within the scope of their employment and authority....

> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death,

13

or loss to person or property caused by the negligent performance of acts by their employees with respect to *proprietary functions* of the political subdivision.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep *public roads* in repair and other negligent failure to remove obstructions from public roads ....

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, *buildings* that are used in connection with the performance of a governmental function ....

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code .... Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

O.R.C. § 2744.02(B)(1)-(5)(emphasis added).  This Court agrees that none of these exceptions to immunity apply in this case.  "Ohio courts have consistently held that political subdivisions, particularly those acting in a governmental capacity, are exempt from intentional tort claims, reasoning that Ohio Rev. Code § 2744.02(B) does not provide a specific exception for intentional torts."  *Woods*, 254 F. Supp. 2d at 880 (citations omitted).  All of plaintiff's state law claims in this case are grounded in allegations of intentional conduct on the part of defendant McElroy. Therefore, this Court concludes that the City of Columbus is immune from monetary liability on plaintiff's state law claims.

14

**b.  State Law Defamation Claim against Defendant McElroy**

To the extent that plaintiff has asserted a defamation claim based on state law, plaintiff's defamation claim is without merit.  One of the elements essential to a defamation claim under Ohio law is that the statement be false and defamatory.  *McGee v. Simon & Schuster, Inc.,* 154 F. Supp. 2d 1308, 1312 (S.D. Ohio 2001)(citing *Jackson v. City of Columbus,* 194 F.3d 737, 757 (6th Cir. 1999).  Plaintiff readily admits that he concealed a loaded weapon in his vehicle, *Deposition of Adama Ndiaye,* at pp. 37-38; it is clear that, in doing so, plaintiff acted in violation of Ohio's criminal law.  *See* O.R.C. §§ 2923.12, .16(C).  Thus, it cannot be argued that any statement made by defendant McElroy concerning "criminal conduct" on the part of plaintiff was false.  Therefore, plaintiff's state law claim of defamation against defendant McElroy is likewise without merit.

**C.  Defendant Williams**

On August 5, 2002, defendant Williams filed a response to plaintiff's amended complaint. However, neither plaintiff's amended complaint nor Williams' response reflect an address for defendant Williams.  Plaintiff was instructed to report to the Court on the status of his attempts to locate defendant Williams (a.k.a. Brian Scott).  *Order* (January 21, 2003).  Plaintiff has failed to do so.

This Court hereby notifies the parties of its intent to dismiss plaintiff's claims against defendant Williams, *sua sponte,* for failure to state a claim upon which relief can be granted.  *See Morrison v. Tomano,* 755 F.2d 515, 516-517 (6th Cir. 1985)(*per curiam*).  It appears that plaintiff's §1983 claims against defendant Williams are based on the fact that defendant McElroy was providing security for Studio 69 at the time the claims arose.  However, a supervisor is not liable under § 1983 "absent a showing that the [supervisor] either encouraged the specific incident of

15

misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir. 1982).  No such showing has been made in this case.  In any event, plaintiff's § 1983 claims against defendant McElroy must, for the reasons stated *supra,* fail.

With respect to plaintiff's parallel state law claims, defendant Williams, like defendant Al Rosa, cannot be held vicariously liable because defendant McElroy was acting within the scope of his public duties as a police officer.  *See Opinion and Order,* at p. 5 (June 2, 2003).  Additionally, as was discussed *supra,* because plaintiff admits to carrying a concealed weapon in such a manner as to violate Ohio law, his defamation claim against this defendant is without merit.  If the parties wish to respond to this Court's expressed intent to dismiss the claims asserted against defendant Williams, they shall do so within twenty-one (21) days of the date of this order.

**WHEREUPON**, the motion for summary judgment filed on behalf of the defendant City and defendant McElroy is **GRANTED**.  These defendants are **DISMISSED** from this action.

Plaintiff may have twenty-one (21) days from the date of this *Opinion and Order* to address the Court's expressed intention to dismiss the remaining claims asserted against defendant Williams.

    s/ Norah McCann King    
Norah McCann King
United States Magistrate Judge